RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0097P (6th Cir.)
File Name: 04a0097p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

COB CLEARINGHOUSE
CORPORATION, also known as
Digital Healthcare, Inc.,
    *Plaintiff-Appellant,*

*v.*

AETNA U.S. HEALTHCARE,
INC.; GREAT WEST LIFE AND
ANNUITY INSURANCE CO.;
BLUE CROSS & BLUE SHIELD
OF KANSAS CITY;
CONNECTICUT GENERAL LIFE
INSURANCE COMPANY,
    *Defendants-Appellees.*

No. 02-3645

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 02-00020—Patricia A. Gaughan, District Judge.

Argued: December 12, 2003

Decided and Filed: April 5, 2004

---

2    *COB Clearinghouse Corp. v. Aetna*    No. 02-3645
    *U.S. Healthcare, Inc., et al.*

Before: SILER and COOK, Circuit Judges;
BERTELSMAN, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Steven M. Ott, OTT & ASSOCIATES, Cleveland, Ohio, for Appellant. Andrew S. Pollis, HAHN, LOESER & PARKS, Cleveland, Ohio, for Appellees. **ON BRIEF:** Steven M. Ott, OTT & ASSOCIATES, Cleveland, Ohio, for Appellant. Andrew S. Pollis, Robert J. Fogarty, HAHN, LOESER & PARKS, Cleveland, Ohio, Mark J. Schwemler, ELLIOTT, REIHNER, SIEDZKOWSKI & EGAN, Blue Bell, Pennsylvania, Christopher S. Williams, Henry G. Grendell, CALFEE, HALTER & GRISWOLD, Cleveland, Ohio, Shaunda A. Patterson-Strachan, Stephen H. Goldberg, Waldemar J. Pflepsen, Jr., JORDEN BURT LLP, Washington, D.C., for Appellees.

_____

**OPINION**

_____

COOK, Circuit Judge. Plaintiff-Appellant, COB Clearinghouse Corp. (COB), appeals the district court's dismissal of its claims against Aetna U.S. Healthcare, Inc., Great West Life and Annuity Insurance Company, Blue Cross and Blue Shield of Kansas City, and Connecticut General Life Insurance Co. (collectively the Insurers). We affirm.

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

## I. BACKGROUND

### A. Procedure

COB filed a Complaint against the Insurers, alleging that it was an authorized agent of Goodyear Tire & Rubber (Goodyear), Bridgestone-Firestone, Inc. (Bridgestone), Babcock & Wilcox, Progressive Processing, Inc. (Progressive), FirstMerit Bank (FirstMerit), Cambridge Industries, Inc. (Cambridge), and State Industries, Inc. (State) (collectively the Employers). The Employers provide ERISA-regulated health care benefits plans to their employees and their employees' dependents. COB claimed that it represented the interests of the Employers pursuant to contracts it had entered into with each Employer.

The Insurers, on the other hand, contracted with different employers to provide similar health care benefits through non-ERISA health insurance policies.

The Complaint set forth five claims. Count One alleged a violation of the Employee Retirement Income Security Act ("ERISA"), and Count Two alleged "federal common law claims." Counts Three through Five alleged claims for unfair and deceptive insurance practices, bad faith, and unjust enrichment.

The Insurers[1] filed Motions to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that COB lacked standing to bring the claims and failed to state a claim upon which relief could be granted. The district court agreed, finding that COB had no standing to bring Counts One and Two and, therefore, the

---

[1] Aetna filed a Motion to Dismiss, in which Connecticut General and Great-West joined. Upon disposition, the district court also granted a dismissal, sua sponte, to Blue Cross & Blue Shield.

district court had no subject matter jurisdiction over the case.[2] Counts Three through Five were dismissed as state law claims which were preempted by ERISA. COB has appealed only the district court's dismissal of Counts One and Two.

### B. Coordination of Benefits Issues

COB's Complaint raised allegations relating to "coordination of benefits" issues. The necessity for health insurers to coordinate health benefits arises when two (or more) health care plans provide benefits to the same individual. The insurers must then determine who is primarily and who is secondarily liable for the payment of that individual's health care benefits. This determination can sometimes be made by reviewing the provisions of the individual insurance contracts. In some instances, however, the insurance contracts may conflict. For example, each may state that it provides only secondary coverage under the circumstances. *See McGurl v. Trucking Employees of North Jersey Welfare Fund, Inc.*, 124 F.3d 471, 473 (3d Cir. 1997). Many states, including Ohio,[3] have resolved these conflicts by adopting part or all of the Model Regulations set forth by the National Association of Insurance Commissioners (NAIC), an independent group of state insurance regulatory commissioners. *See McGurl*, 124 F.3d at 483.[4] That state

---

[2] The district court also found that Counts One and Two failed to state a claim upon which relief could be granted. COB alleged several errors challenging that determination, and the Insurers alleged an alternative argument for affirming the district court's decision. Due to our disposition of the issue of COB's standing, it is not necessary for us to address these other issues.

[3] *See* Ohio Administrative Code § 3901-1-56(G).

[4] In some cases, the insurance policy at issue may also incorporate the provisions of the NAIC Model Regulations. *See Baptist Mem'l Hosp. v. Pan American Life Ins. Co.*, 45 F.3d 992, 995 (6th Cir. 1995).

law would apply in cases where coordination of benefits is required between two plans which are not subject to ERISA.

ERISA, however, provides no guidance on coordination of benefits issues. *See Regents of the Univ. of Mich. v. Employees of Agency Rent-a-Car Hosp. Assoc.*, 122 F.3d 336, 339 (6th Cir. 1997). In cases involving two ERISA-regulated plans, therefore, federal courts have fashioned federal common law to resolve these issues. *McGurl*, 124 F.3d at 484 (adopting "employer first" rule, providing that plan which covers beneficiary as employee is primary and plan which covers beneficiary as dependent of employee is secondary). *See also PM Group Life Ins. Co. v. Western Growers Assur. Trust*, 953 F.2d 543, 548 (9th Cir. 1992); *Reinforcing Iron Workers v. Mich. Bell Tel. Co.*, 746 F. Supp. 668, 670-71 (E.D. Mich. 1990) (adopting the "birthday rule," declaring plan of employee whose birthday occurs earlier in the year primarily responsible for medical benefits of a minor, where parents are both covered by separate ERISA plans).

COB alleged that, in this case, certain beneficiaries were insured both under one of the Employers' self-funded ERISA plans and under one of the Insurers' non-ERISA policies. COB claimed that the Insurers' policies were primary, presumably because the coordination of benefits clauses of the applicable insurance contracts conflicted. COB then argued that the district court should extend the federal common law established in *McGurl* to these cases that involve only one ERISA-regulated plan. Under such a rule, COB contends that the Employers paid claims for which the Insurers were primarily liable and they were only secondarily liable.

### C. COB's Contracts with the Employers

COB bases its claim to being an authorized agent of the Employers upon the contract—called either the "Audit Agreement" or the "Recovery Service Agreement"—that it

entered into with each Employer. While the contracts with the seven Employers were each slightly different, the agreements generally provided that COB would review each Employer's records, use its "proprietary systems" to determine if the Employer made payments under its health care plan for which the Employer was only secondarily liable, and attempt to collect payment from the party that COB believed to be primarily liable in exchange for a percentage of the amounts recovered.

The relevant provisions of the Goodyear, Bridgestone, Progressive, Babcock & Wilcox, and FirstMerit agreements were substantively identical. Each of these five agreements contained an "agency clause," appointing COB its agent for certain purposes:

> [Employer will] make [COB,] and its contractors, [the Employer's] agents for the purpose of carrying out an audit of coordination of benefits issues, and the subrogation and collection of indemnities due as a result of such audit as provided for and privileged by standard rules [or law] (for example, Section 3902.13(F) of the Ohio Revised Code or the rule[s] of the [NAIC], as interpreted by the state at issue on any given claim).

Those agreements then required COB to make three attempts to collect every claim and "further pursue every claim of a value exceeding $500.00 for the period of at least one year, or until collection of the correct indemnity, or settlement of the claim, whichever occurs first." The agreements all provided, however, that COB would "commence no litigation in the name of [the Employer], or on its behalf, without prior notice to [the Employer]."

The other two agreements were similar. The State agreement differed in that it authorized COB to report potential claims to State, but did not authorize COB to pursue them. The Cambridge agreement differed in that it authorized

COB to "conduct litigation to recover amounts owed" without requiring prior notice to Cambridge.

## II. ANALYSIS

The district court dismissed those counts COB appeals—Counts One and Two of COB's Complaint—on the ground that COB did not have standing to bring the case. "We review a district court's decision to grant a motion to dismiss for lack of subject matter jurisdiction *de novo.*" *Joelson v. United States*, 86 F.3d 1413, 1416 (6th Cir. 1996). "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Having invoked the jurisdiction of the federal courts, however, it is the plaintiff's burden to demonstrate that jurisdiction is proper. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Kardules v. City of Columbus*, 95 F.3d 1335, 1346 (6th Cir. 1996).

Assuming, as we must, that COB was an authorized agent of the Employers under the terms of the parties' agreements, we must determine whether such an authorized agent has standing under ERISA to pursue these claims.

ERISA strictly limits standing. 29 U.S.C. § 1132(a)(3)[5] provides, in pertinent part, that:

A civil action may be brought -

. . .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

And courts narrowly construe ERISA to permit only the parties specifically enumerated to bring suit. *See Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1081 (9th Cir. 2000) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27 (1983)). *See also Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 951 (6th Cir. 1990) (narrowly construing proper parties under 29 U.S.C. § 1132(a)(1)). Indeed, even an assignee of a participant, beneficiary, or fiduciary is generally not permitted to maintain an ERISA claim. *See Simon v.*

---

[5] COB did not identify the ERISA provision under which it brought its Complaint. The district court, however, broadly interpreted the Complaint and assumed that the action was brought pursuant to 29 U.S.C. § 1132(a)(3), which was the provision identified by COB in its brief in opposition to the Motion to Dismiss. There was some dispute before the district court regarding whether COB sought equitable relief or monetary damages. We note that 29 U.S.C. § 1132(a)(3), which provides for equitable relief, allows "participants, beneficiaries, and fiduciaries" to bring claims, while 29 U.S.C. § 1132(a)(1), which provides for monetary damages, only allows "participants and beneficiaries" to file suit. Like the district court, we will assume that COB brought the action pursuant to 29 U.S.C. § 1132(a)(3), as that is the only section which gives rise to any argument that COB has standing in this case.

*Belwith Int'l, Inc.*, 3 Fed. Appx. 363, 364 (6th Cir. 2001). It is undisputed that COB was neither a participant, a beneficiary, nor a fiduciary according to the dictates of the statute. COB argues, nevertheless, that the Employers whom it represented were fiduciaries and that as the agent of the Employers, it could bring suit.

Whether an employer who is also an ERISA plan sponsor is a fiduciary of the plan generally requires a detailed analysis of the employer's actions and whether those actions were performed in the employer's fiduciary capacity. *See Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 718 (6th Cir. 2000). "[W]e must examine the conduct at issue to determine whether it constitutes 'management' or 'administration' of the plan, giving rise to fiduciary concerns, or merely a business decision that has an effect on an ERISA plan not subject to fiduciary duties." *Id.* (citations and internal quotations omitted). But even assuming that the Employers were fiduciaries who had a right to file suit pursuant to 29 U.S.C. § 1132(a)(3), that assumption does not confer standing on COB to sue in its own name as the Employers' agent. Restatement (Second) of Agency § 372(2) (1958) provides that "an agent does not have such an interest in a contract as to entitle him to maintain an action at law upon it in his own name merely because he is entitled to a portion of the proceeds as compensation for making it or because he is liable for its breach."

## III.  CONCLUSION

Given COB's lack of standing, we affirm the decision of the district court.